ANDREW K. JACOBSON (CSBN 148583)
LAURA KOCH (CSBN 266072)
BAY OAK LAW
180 Grand Ave Ste 700
Oakland, California  94612
Telephone:  (510) 208-5500
Fax: (510) 208-5511
andy@bayoaklaw.com
laura@bayoaklaw.com

CAROLINE N. VALENTINO (CSBN 118438)
HAIMS VALENTINO LLP
180 Grand Ave Ste 700
Oakland, California 94612
Telephone: (510) 835-0500
Fax: (510) 835-2833
cvalentino@hjmmlaw.com

Counsel for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ROBERT J. LANG, NOBORU MIYAJIMA, MANUEL SIRGO, NICOLA BANDONI, TOSHIKAZU KAWASAKI, AND JASON KU <br><br> PLAINTIFFS, <br><br> v. <br><br> SARAH MORRIS, <br><br> DEFENDANT. | Case No. C11-01366-EMC <br><br> FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR COPYRIGHT INFRINGEMENT <br><br> DEMAND FOR JURY TRIAL |

//

//

//

**COMPLAINT**

Robert Lang, Noboru Miyajima, Manuel Sirgo, Nicola Bandoni, Toshikazu Kawasaki, and Jason Ku ("Plaintiffs") allege the following.

## I.   NATURE OF THE ACTION

1.      This is an action by six artists to recover damages and enjoin infringement of their copyrighted artworks by Sarah Morris, an internationally known painter and film maker.

## II.   PARTIES

2.      Plaintiff Robert J. Lang ("Lang") is, and has been at all times relevant to this lawsuit, an individual residing in Alamo, California.

3.      Plaintiff Noboru Miyajima ("Miyajima") is an individual residing in Japan.

4.      Plaintiff Manuel Sirgo ("Sirgo") is an individual residing in Spain.

5.      Plaintiff Nicola Bandoni ("Bandoni") is an individual residing in Italy.

6.      Plaintiff Toshikazu Kawasaki ("Kawasaki") is an individual residing in Japan.

7.      Plaintiff Jason Ku ("Ku") is an individual residing in Massachusetts.

8.      Defendant Sarah Morris ("Morris" or "Defendant") is an individual residing in New York.

## III.   JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this case arises under the Copyright Laws of the United States, 17 U.S.C. § 101 et seq. ("Copyright Act"). Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or this is a judicial district in which Defendant may be found. Defendant may be found in this district in that this



**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

Court has personal jurisdiction over her. *See Brackett v. Hilton Hotels Corp.*, 619 F.Supp. 2d 810, 816 (N.D. Cal. 2008) (interpreting Section 1400(a) to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state").

10.     This Court has supplemental jurisdiction over the claims by Miyajima, Sirgo, Bandoni, Kawasaki, and Ku because these claims are so related to Lang's claims that they form part of the same case or controversy.

## IV.   INTRADISTRICT ASSIGNMENT

11.     Pursuant to Civil L.R. 3-2(c) and 3-2(d), Oakland is an appropriate division for this action because a substantial part of the events or omissions which give rise to the claims of Robert Lang occurred in Contra Costa County. Lang lives and works in the city of Alamo, which lies in Contra Costa County.

## V.   PLAINTIFFS' RIGHT TO COPYRIGHT PROTECTION

12.     On the date of first publication of works relevant hereto, each Plaintiff was a national or domiciliary of the United States or a country with which the United States has a copyright treaty.

13.     Each of Plaintiffs' works relevant hereto was first published in the United States or in a country that is party to the Universal Copyright Convention.

## VI.   BACKGROUND

14.     The worldwide popularity of origami, the ancient art of paper folding, has increased dramatically in the past several decades. The application of mathematical formulas has made it possible to design and create lifelike, three-dimensional figures from a single sheet of paper. Modern origami is a unique sculptural art with millions of enthusiasts (also known as "folders" or "origami artists") who use the internet to share images and communicate about their interests. In addition, there are local and international folding groups, as well as conferences, publications, competitions, and art

1    exhibits featuring origami.

2        15.    Plaintiffs are among a small number of artists who are capable of

3    designing highly complex origami models. Plaintiffs have created and published crease

4    patterns for some of their models.

5        16.    The lines of a crease pattern represent the folds needed to create a three-

6    dimensional origami model from a sheet of paper, but the intricacy of these geometric

7    diagrams gives crease patterns their own aesthetic appeal. Crease patterns thus lend

8    themselves to derivative works, such as colorized versions.

9        17.    Since the mid-1990s, Sarah Morris has been internationally recognized as

10   a painter and film maker. In 2007, Morris debuted her "Origami series," which consists

11   of approximately 37 paintings. Morris transferred crease patterns to canvas and applied

12   household gloss paint to the spaces between the lines. Morris has represented in

13   interviews and promotional materials that the paintings in the Origami series are based

14   on "found origami designs" or "traditional" patterns.

15       18.    Twenty-four of Morris's paintings are strikingly similar to copyrighted

16   artworks belonging to Plaintiffs ("Plaintiffs' Works") because Morris has unlawfully

17   copied Plaintiffs' Works for commercial use. Attached as **Exhibit A** and incorporated

18   herein by this reference is a chart showing each Plaintiff's artwork and the

19   corresponding Infringing Work.

20       19.    Plaintiffs are not aware that the term is part of the work's title. The

21   infringing paintings by Morris (collectively "the Infringing Works") are referred to by

22   Plaintiffs and, on information and belief, are named: "Angel," "Bat," "Calypte Anna,"

23   "Cat," "Cat" (outline)[1], "Dragon," "Falcon," "Grasshopper," "Grasshopper" (outline),

24   _____

25       [1] Where the word "outline" appears in parentheses, Plaintiffs have used
     this term only to distinguish the painting style. Plaintiffs are not aware that the
26   term is part of the work's title.

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

"June Beetle," "Kawasaki Cube," "Mommoth" (outline), "Parrot," "Pegasus," "Pegasus" (outline), "Praying Mantis," "Rabbit," "Rhino Beetle," "Rockhopper," "Swan," "Swan" (outline), "Tarantula," "Weasel" (outline), and "Wolf."

20.     Each of Plaintiffs' Works is the subject of a valid Certificate of Copyright Registration from the Register of Copyrights or is the subject of an application under which registration is pending. Attached as **Exhibit B** and incorporated herein by this reference is a list of Plaintiffs' Works and the corresponding copyright information, including the dates of registration or application for registration where pending.

21.     The paintings in the Origami series have been exhibited individually and in various combinations in the United States and all over the world, including New York, Miami, London, Berlin, Tokyo, Frankfurt, and Abu Dhabi. Images of the paintings have also been published in exhibition promotional materials, auction catalogs, and magazine articles, both in print and on the internet. Images of many of the paintings are available on the internet by searching for the terms "sarah morris origami" on Google or Yahoo and selecting "Images." The paintings also appear in online photo sharing programs such as Flickr.com.

22.     On information and belief, Morris is responsible for the creation of additional works that are derivative of the Infringing Works, including, but not limited to, a magazine cover and handmade rug derived from "Angel," and signed original prints of "Rockhopper."

23.     Morris actively promotes herself and her work nationally and internationally. On information and belief, Morris has sold or offered for sale the Infringing Works throughout the United States and internationally. Morris has promoted the Origami series extensively, through interviews and articles that are readily accessible on the internet, in videos, and in print. Morris has exhibited the Infringing Works in cities around the world.

24.     Morris has willfully infringed Plaintiffs' copyrights by reproducing, displaying, distributing, and utilizing for purposes of trade and promotion unauthorized derivative versions of Plaintiffs' Works.

25.     Morris has received substantial benefits in connection with the commercial promotion of the Infringing Works. On information and belief, Morris has derived significant income and advanced her reputation and career as a result of exhibiting, promoting, licensing, and selling the Origami series in general and the Infringing Works specifically.

26.     Unless enjoined, Morris will continue the infringing activities and will continue to derive income and other benefits therefrom.

27.     Morris has claimed in interviews and promotional materials that the Origami series is based on "found diagrams," "found designs," and "traditional origami diagrams." During the same time period, Plaintiffs have continuously held themselves out as the authors of the crease patterns Morris copied.

28.     Morris has created confusion as to the authorship of Plaintiffs' Works and threatened their professional reputation by failing to attribute Plaintiffs and by making repeated, affirmative misrepresentations about the origins of the crease patterns she copied.

29.     Morris's actions have created competition for Plaintiffs by occupying the market for painted versions of their copyrighted artworks.



**FACTS SPECIFIC TO ROBERT J. LANG**

30.     Lang has been an avid student of origami for over forty years and is recognized as one of the world's leading masters of the art.

31.     Lang makes his living primarily by creating commissioned origami works for private and commercial use, writing and publishing books on origami, lecturing on the topic of origami, and consulting on the scientific and mathematical applications of

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

1  origami. Lang's origami models have appeared in print and on television and have been

2  placed on display in public venues and galleries.

3      32.    Lang is the author of the book *Origami Design Secrets: Mathematical*

4  *Secrets for an Ancient Art*, published on or about October 23, 2003, by A K Peters Ltd.

5  The book's copyright was registered on December 1, 2003, which is within three

6  months after first publication of the work. A copy of the Certificate of Registration of

7  Copyright is attached as **Exhibit C** and incorporated herein by this reference.

8      33.    The artworks published in *Origami Design Secrets* that are relevant to

9  this lawsuit are:

10      •    "Grasshopper" (Figure 5.29 at page 113);

11      •    "Hummingbird" (Figure 4.15 at page 66);

12      •    "KNL Dragon" (Figure 6.12 at page 138);

13      •    "Pegasus" (Figure 8.27 at page 246);

14      •    "Praying Mantis" (Figure 8.49 at page 260);

15      •    "Rabbit" (Figure 13.11 at page 530); and

16      •    "Tarantula" (Figure 9.23(a) at page 300).

17      34.    Lang has maintained a website at www.langorigami.com at all times

18  relevant to this lawsuit. Since 2004, the following notice has appeared on Lang's

19  website: "This site (excluding linked websites) is controlled by Robert J. Lang from

20  within the state of California, USA. By accessing this website, you agree that all matters

21  relating to access to, or use of, this website shall be governed by the laws and courts of

22  the state of California." Since 2004, the website has also notified users that "Dr. Lang

23  resides in Alamo, California."

24      35.    Lang's artworks "Cooper's Hawk" and "Eupatorus gracilicornis" were

25  published on Lang's website at all times relevant to this lawsuit. A copy of the

26  Certificate of Registration of Copyright for "coopers_hawk_cp" (a.k.a. "Cooper's

Hawk") is attached as **Exhibit D** and incorporated herein by this reference. A copy of the Certificate of Registration of Copyright for "Eupatorus gracilicornis CP" is attached as **Exhibit E** and incorporated herein by this reference.

36.     *The New Yorker* magazine published an article about Lang titled *The Origami Lab: Why a physicist dropped everything for paper folding,*" in its February 2007 issue (hereinafter "the Lang article"). The first sentence of the Lang article identifies Lang as a Californian. The Lang article also states: "Lang and his wife and their teen-age son live about twenty miles east of Oakland," and goes on to describe Lang's work studio, located at his home. A printout of the Lang article, retrieved from the website of *The New Yorker* on March 3, 2011, is attached as **Exhibit F** and incorporated herein by this reference.

37.     An interview with Morris was published in the September 2007 issue of *Res* magazine. A copy of the article retrieved March 3, 2011 from internet address http://www.resartworld.com/files/resvolume1.zip is attached as **Exhibit G** and incorporated herein by this reference. The article attributed the following statement to Morris: "There was a very intriguing article in [T]he New Yorker magazine a couple of months ago about how origami is used now for scientific solutions to do with a [sic] heart valves, for instance." On information and belief, Morris was referring to the Lang article attached as **Exhibit F**.

38.     Morris referred directly to the Lang article in an interview published on the internet:

*Sarah*:     Did you see the article in The New Yorker that came out right when I did my show with Friedrich Petzel Gallery, which was all with origami pieces? It's about a physicist named Robert Lang who uses origami for heart valves and different scientific solutions because it's such an easy form that gives rise to these complex things and that you can actually fold it in a way that opens in a sterile way. Did you read that?

*Daniel*:     No. But I'd like to read it.

*Sarah*:     I'll have to send it to you. It was February 2007. It's really

1   fascinating. . . .

2   A printout of the interview retrieved on March 3, 2011 from internet address

3   www.theadamandeveprojects.com/project/a-diagram-of-a-headache is attached as

4   **Exhibit H** and incorporated herein by this reference.

5       39.    Morris's paintings that infringe Lang's copyrights are dated 2007 or

6   2008. On information and belief, Morris created most or all of those artworks after she

7   read the Lang article. Morris targeted willful acts of copyright infringement at Lang

8   with knowledge that Lang lived and worked in California and that the impact would be

9   felt in California.

10      40.    Lang learned of Morris's infringement of his artworks on April 2, 2009,

11  when he was contacted by another origami artist who had recognized crease patterns

12  created by Lang and other Plaintiffs upon viewing Morris's work. After seeing examples

13  of infringement of his work on the internet, Lang took action that same day, sending

14  the first of three emails to galleries associated with Morris in an attempt to reach her.

15  Lang informed the galleries that he wished to communicate with Morris because he had

16  become aware that she had used his copyrighted artworks without authorization,

17  colorized them, and represented them as her own for commercial purposes. Each of

18  these emails included Lang's California mailing address. A copy of these emails is

19  attached as **Exhibit I** and incorporated herein by this reference.

20      41.    On June 23, 2009, Morris responded to Lang in a letter attached to an

21  email. Morris admitted she had access to Lang's artworks at the time she created the

22  Infringing Works; she wrote: "I referred to some of your instructions as inspiration for

23  my paintings. . . ." A true and correct copy of Morris's letter is attached as **Exhibit J**

24  and incorporated herein by this reference.

25      42.    On information and belief, Morris has visited California in a professional

26  capacity on multiple occasions. Morris was a featured guest for an event on November

-9-                                                    Case No. C11-01366-EMC

30, 2009, at the Southern California Institute of Architecture in Los Angeles.

43.     On information and belief, Morris's painting "Calypte Anna" is located in Los Angeles at Adam Biesk Inc., which is marketing the painting for sale. "*Calypte anna*" is the scientific name for the most common species of hummingbird in southern California.

44.     Morris's "Calypte Anna" is a painted version of Lang's "Hummingbird" crease pattern. On information and belief, Morris accessed this artwork from Lang's California-based website.

### FACTS SPECIFIC TO NOBORU MIYAJIMA

45.     Miyajima is a professional origami artist and instructor. He has published origami models and crease patterns in *Origami Tanteidan Magazine* and *Origami Tanteidan Convention Book*.

46.     Since 2002, Miyajima has maintained a website at http://www.h5.dion.ne.jp/~origami/e/.

47.     The following artworks of Miyajima were published on Miyajima's website at all times relevant to this lawsuit:

- "Bat,"
- "Cat,"
- "Mommoth,"
- "Penguin,"
- "Swan,"
- "Weasel," and
- "Wolf."

48.     A copy of the Certificate of Registration of Copyright for each artwork is attached as **Exhibits K - Q** and incorporated herein by this reference.

49.     Miyajima learned of Morris's infringement of his artworks no earlier than

1    August 4, 2009.

2                              **FACTS SPECIFIC TO MANUEL SIRGO**

3            50.     Manuel Sirgo, also known as Manuel Sirgo Alvarez, is an origami artist

4    living in Spain. He is the president of the Spanish paperfolding association, *Asociacion*

5    *Espanola de Papiroflexia*. Sirgo is the author of several origami books and is well

6    known in the origami world.

7            51.     Sirgo's artwork "Macaw" appears on page 27 of his book, *Origami*

8    *Menagerie: 21 Challenging Models*, published in the United States in 2008 by Dover

9    Publications, Inc. Copyright registration for this artwork is pending; a copy of the

10   application is attached as **Exhibit R** and incorporated herein by this reference.

11           52.     Sirgo learned of Morris's infringement of his artwork no earlier than

12   October 12, 2009.

13                             **FACTS SPECIFIC TO NICOLA BANDONI**



14           53.     Bandoni is an origami artist living in Italy.

15           54.     Bandoni's artwork "Cyclommatus metallifer" was published on the

16   internet at all times relevant to this lawsuit.

17           55.     A copy of the Certificate of Registration of Copyright for "Cyclommatus

18   metallifer" is attached as **Exhibit S** and incorporated herein by this reference.

19           56.     Bandoni learned of Morris's infringement of his artwork no earlier than

20   December 4, 2009.

21                           **FACTS SPECIFIC TO TOSHIKAZU KAWASAKI**

22           57.     Kawasaki is an origami artist living in Japan.

23           58.     Kawasaki is the author of the artwork "Kawasaki Cube #1," appearing at

24   page 30 of a book by Kunihiko Kasahara and Toshie Takahama, *Origami for the*

25   *Connoisseur*, published in the United States in 1987 by Japan Publications, Inc.

26           59.     A copy of the Certificate of Registration of Copyright for "Kawasaki Cube

-11-                                    <span style="color:red">**Case No. C11-01366-EMC**</span>

1    #1" is attached as **Exhibit T** and incorporated herein by this reference.

2        60.     Kawasaki learned of Morris's infringement of his artwork no earlier than

3    October 22, 2009.

4                     **FACTS SPECIFIC TO JASON KU**

5        61.     Ku is an origami artist living in Massachusetts.

6        62.     Ku's artwork "Harpy" was published on the internet at all times relevant

7    to this lawsuit.

8        63.     A copy of the Certificate of Registration of Copyright is attached as

9    **Exhibit U** and incorporated herein by this reference.

10        64.     Ku learned of Morris's infringement of his artwork no earlier than

11    December 13, 2010.

12    //

13    //

14    //

15    //

16    //

17    //

18    //

19    //

20    //

21    //

22    //

23    //

24    //

25    //

26    //

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

### FIRST CLAIM FOR RELIEF
### (BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)

65.     Lang re-alleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

66.     At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Cooper's Hawk."

67.     Morris's painting "Falcon" (at Fig. A2, below) is substantially similar to Lang's artwork "Cooper's Hawk" (at Fig. A1, below).

68.     Morris willfully and without permission copied Lang's artwork or its constituent elements.

69.     Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.

Fig. A1: Lang's "Cooper's Hawk"          Fig. A2 : Morris's "Falcon"

    

//

//

**Case No. C11-01366-EMC**

### FIRST AMENDED COMPLAINT

**SECOND CLAIM FOR RELIEF**
**(BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)**

70.    Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 69, as though fully set forth herein.

71.    At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Eupatorus gracilicornis."

72.     Morris's painting "Rhino Beetle" (at Fig. B2, below) is substantially similar to Lang's artwork "Eupatorus gracilicornis" (at Fig. B1, below).

73.    Morris willfully and without permission copied Lang's artwork or its constituent elements.

74.    Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.



Fig. B1: Lang's "Eupatorus gracilicornis" (Rhinocerous Beetle)        Fig. B2: Morris's "Rhino Beetle"

 

//

//

Case No. C11-01366-EMC

**FIRST AMENDED COMPLAINT**

### THIRD CLAIM FOR RELIEF
### (BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)

75.     Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 74, as though fully set forth herein.

76.     At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Grasshopper."

77.     Two of Morris's paintings titled "Grasshopper" (at Figs. C2 and C3, below) are substantially similar to Lang's artwork "Grasshopper" (at Fig. C1, below).

78.     Morris willfully and without permission copied Lang's artwork or its constituent elements.

79.     Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. C1: Lang's "Grasshopper"        Fig. C2: Morris's "Grasshopper"

    

//

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**



Fig. C1: Lang's "Grasshopper"



Fig. C3: Morris's "Grasshopper" (outline)

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

Case No. C11-01366-EMC

FIRST AMENDED COMPLAINT

**FOURTH CLAIM FOR RELIEF**
**(BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)**

80.      Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 79, as though fully set forth herein.

81.      At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Hummingbird."

82.      Morris's painting "Calypte Anna" (at Fig. D2, below) is substantially similar to Lang's artwork "Hummingbird" (at Fig. D1, below).

83.      Morris willfully and without permission copied Lang's artwork or its constituent elements.

84.      Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. D1: Lang's "Hummingbird"    Fig. D2: "Calypte Anna"





//

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

**FIFTH CLAIM FOR RELIEF**
**(BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)**

85.     Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 84, as though fully set forth herein.

86.     At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "KNL Dragon."

87.     Morris's painting "Dragon" (at Fig. E2, below) is substantially similar to Lang's artwork "KNL Dragon" (at Fig. E1, below).

88.     Morris willfully and without permission copied Lang's artwork or its constituent elements.

89.     Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. E1: Lang's "KNL Dragon"        Fig. E2: Morris's "Dragon"





//

Case No. C11-01366-EMC

**FIRST AMENDED COMPLAINT**

### SIXTH CLAIM FOR RELIEF
### (BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)

90.     Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 89, as though fully set forth herein.

91.     At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Pegasus."

92.     Two of Morris's paintings titled "Pegasus" (at Figs. F2 and F3, below) are substantially similar to Lang's artwork "Pegasus" (at Fig. F1, below).

93.     Morris willfully and without permission copied Lang's artwork or its constituent elements.

94.     Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. F1: Lang's "Pegasus"         Fig. F2: Morris's "Pegasus"




//

**Case No. C11-01366-EMC**

### FIRST AMENDED COMPLAINT



Fig. F1: Lang's Pegasus                    Fig. F3: Morris's "Pegasus" (outline)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

FIRST AMENDED COMPLAINT

**SEVENTH CLAIM FOR RELIEF**
**(BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)**

95.     Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 94, as though fully set forth herein.

96.     At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Praying Mantis."

97.     Morris's painting "Praying Mantis" (at Fig. G2, below) is substantially similar to Lang's artwork "Praying Mantis" (at Fig. G1, below).

98.     Morris willfully and without permission copied Lang's artwork or its constituent elements.

99.     Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. G1: Lang's "Praying Mantis"          Fig. G2: Morris's "Praying Mantis"




//

Case No. C11-01366-EMC

**FIRST AMENDED COMPLAINT**

**EIGHTH CLAIM FOR RELIEF**
**(BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)**

100.    Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 99, as though fully set forth herein.

101.    At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Rabbit."

102.    Morris's painting "Rabbit" (at Fig. H2, below) is substantially similar to Lang's artwork "Rabbit" (at Fig. H1, below).

103.    Morris willfully and without permission copied Lang's artwork or its constituent elements.

104.    Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. H1: Lang's "Rabbit"          Fig. H2: Morris's "Rabbit"




//

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

### NINTH CLAIM FOR RELIEF
### (BY ROBERT J. LANG FOR COPYRIGHT INFRINGEMENT)

105.    Lang re-alleges and incorporates by reference paragraphs 1 through 44, and paragraphs 65 through 104, as though fully set forth herein.

106.    At all times relevant hereto, Lang has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Tarantula."

107.    Morris's painting "Tarantula" (at Fig. I2, below) is substantially similar to Lang's artwork "Tarantula" (at Fig. I1, below).

108.    Morris willfully and without permission copied Lang's artwork or its constituent elements.

109.    Lang is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial. Alternatively, pursuant to 17 U.S.C. § 504, Lang has and reserves the right to elect statutory damages. Lang is furthermore entitled to attorney's fees and costs pursuant to 17 U.S.C. § 505.

Fig. I1: Lang's "Tarantula"        Fig. I2 : Morris's "Tarantula"




//

**Case No. C11-01366-EMC**

### FIRST AMENDED COMPLAINT

### TENTH CLAIM FOR RELIEF
### (BY NOBORU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)

110.    Miyajima re-alleges and incorporates by reference paragraphs 1 through 29, and paragraphs 45 through 49, as though fully set forth herein.

111.    At all times relevant hereto, Miyajima has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Bat."

112.    Morris's painting "Bat" (at Fig. J2, below) is substantially similar to Miyajima's artwork "Bat" (at Fig. J1, below).

113.    Morris willfully and without permission copied Miyajima's artwork or its constituent elements.

114.    Miyajima is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.



Fig. J1: Miyajima's "Bat"          Fig. J2: Morris's "Bat"




//

//

Case No. C11-01366-EMC

**FIRST AMENDED COMPLAINT**

### ELEVENTH CLAIM FOR RELIEF
### (BY NOBURU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)

115.    Miyajima re-alleges and incorporates by reference paragraphs 1 through 29, paragraphs 45 through 49, and paragraphs 110 through 114, as though fully set forth herein.

116.    At all times relevant hereto, Miyajima has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Cat."

117.    Two of Morris's paintings titled "Cat" (at Figs. K2 and K3, below) are substantially similar to Miyajima's artwork "Cat" (at Fig. K1, below).

118.    Morris willfully and without permission copied Miyajima's artwork or its constituent elements.

119.    Miyajima is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.

Fig. K1: Miyajima's "Cat"



Fig. K2: Morris's "Cat"



//

Case No. C11-01366-EMC

### FIRST AMENDED COMPLAINT



Fig. K1: Miyajima's "Cat"          Fig. K3: Morris's "Cat" (outline)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

-26-

FIRST AMENDED COMPLAINT

**TWELFTH CLAIM FOR RELIEF**
**(BY NOBURU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)**

120.    Miyajima re-alleges and incorporates by reference paragraphs 1 through 29, paragraphs 45 through 49, and paragraphs 110 through 119, as though fully set forth herein.

121.    At all times relevant hereto, Miyajima has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Mommoth."

122.    Morris's painting "Mommoth" (at Fig. J2, below) is substantially similar to Miyajima's artwork "Mommoth" (at Fig. J1, below).

123.    Morris willfully and without permission copied Miyajima's artwork or its constituent elements.

124.    Miyajima is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.




Fig. L1: Miyajima's "Mommoth"          Fig. L2 : Morris's "Mommoth" (outline)

//

**FIRST AMENDED COMPLAINT**



**THIRTEENTH CLAIM FOR RELIEF**
**(BY NOBURU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)**

125.    Miyajima re-alleges and incorporates by reference paragraphs 1 through 29, paragraphs 45 through 49, and paragraphs 110 through 124, as though fully set forth herein.

126.    At all times relevant hereto, Miyajima has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Penguin."

127.    Morris's painting "Rockhopper" (at Fig. M2, below) is substantially similar to Miyajima's artwork "Penguin" (at Fig. M1, below).

128.    On information and belief, Morris authorized and signed a limited edition of fifty-five original prints of the painting "Rockhopper."

129.    Morris willfully and without permission copied Miyajima's artwork or its constituent elements.

130.    Miyajima is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.



Fig. M1: Miyajima's "Penguin"



Fig. M2: Morris's "Rockhopper"



-28-

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**

1

### FOURTEENTH CLAIM FOR RELIEF
### (BY NOBURU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)

2

131.     Miyajima re-alleges and incorporates by reference paragraphs 1 through

3

29, paragraphs 45 through 49, and paragraphs 110 through 130, as though fully set

4

forth herein.

5

132.     At all times relevant hereto, Miyajima has held exclusive rights under the

6

Copyright Act to reproduce, distribute, display, or produce derivative works of his

7

artwork "Swan."

8

133.      Two of Morris's paintings titled "Swan" (at Figs. N2 and N3, below) are

9

substantially similar to Miyajima's artwork "Swan" (at Fig. N1, below).

10

134.     Morris willfully and without permission copied Miyajima's artwork or its

11

constituent elements.

12

135.     Miyajima is entitled to recover his actual damages and Morris's profits

13

attributable to such infringement, subject to proof at trial.

14



15

Fig. N1: Miyajima's "Swan"          Fig. N2: Morris's "Swan"

16

17

18

19

20

 

21

22

23

24

//

25

//

26

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**


Fig. N1: Miyajima's "Swan"


Fig. N3: Morris's "Swan" (outline)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**FIRST AMENDED COMPLAINT**

**FIFTEENTH CLAIM FOR RELIEF**
**(BY NOBURU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)**

136.    Miyajima re-alleges and incorporates by reference paragraphs 1 through 29, paragraphs 45 through 49, and paragraphs 110 through 135 as though fully set forth herein.

137.    At all times relevant hereto, Miyajima has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Weasel."

138.    Morris's painting "Weasel" (at Fig. O2, below) is substantially similar to Miyajima's artwork "Weasel" (at Fig. O1, below).

139.    Morris willfully and without permission copied Miyajima's artwork or its constituent elements.

140.    Miyajima is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.

Fig. O1: Miyajima's "Weasel"        Fig. O2: Morris's "Weasel" (outline)





//

Case No. C11-01366-EMC

**FIRST AMENDED COMPLAINT**

**SIXTEENTH CLAIM FOR RELIEF**
**(BY NOBURU MIYAJIMA FOR COPYRIGHT INFRINGEMENT)**

141.     Miyajima re-alleges and incorporates by reference paragraphs 1 through 29, paragraphs 45 through 49, and paragraphs 110 through 140, as though fully set forth herein.

142.     At all times relevant hereto, Miyajima has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Wolf."

143.      Morris's painting "Wolf" (at Fig. P2, below) is substantially similar to Miyajima's artwork "Wolf" (at Fig. P1, below).

144.     Morris willfully and without permission copied Miyajima's artwork or its constituent elements.

145.     Miyajima is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.

Fig. P1: Miyajima's "Wolf"          Fig. P2: Morris's "Wolf"

 

//

//

**Case No. C11-01366-EMC**

**FIRST AMENDED COMPLAINT**



**SEVENTEENTH CLAIM FOR RELIEF**
**(BY MANUEL SIRGO FOR COPYRIGHT INFRINGEMENT)**

146.    Sirgo re-alleges and incorporates by reference paragraphs 1 through 29 and paragraphs 50 through 52 as though fully set forth herein.

147.    At all times relevant hereto, Sirgo has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Macaw."

148.    Morris's painting "Parrot" (at Fig. Q2, below) is substantially similar to Sirgo's artwork "Macaw" (at Fig. Q1, below).

149.    Morris willfully and without permission copied Sirgo's artwork or its constituent elements.

150.    Sirgo is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.

Fig. Q1: Sirgo's "Macaw"                    Fig. Q2: Morris's "Parrot"




//

//

//

Case No. C11-01366-EMC

**FIRST AMENDED COMPLAINT**

**EIGHTEENTH CLAIM FOR RELIEF**
**(BY NICOLA BANDONI FOR COPYRIGHT INFRINGEMENT)**

151.    Bandoni re-alleges and incorporates by reference paragraphs 1 through 29 and paragraphs 53 through 56 as though fully set forth herein.

152.    At all times relevant hereto, Bandoni has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Cyclommatus metallifer."

153.    Morris's painting "June Beetle" (at Fig. R2, below) is substantially similar to Bandoni's artwork "Cyclommatus metallifer" (at Fig. R1, below).

154.    Morris willfully and without permission copied Bandoni's artwork or its constituent elements.

155.    Bandoni is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.



Fig. R1: Bandoni's "Cyclommatus metallifer" (June Beetle)          Fig. R2: Morris's "June Beetle"




//

//

-34-

<span style="color:red">Case No. C11-01366-EMC</span>

**FIRST AMENDED COMPLAINT**

### NINETEENTH CLAIM FOR RELIEF
### (BY TOSHIKAZU KAWASAKI FOR COPYRIGHT INFRINGEMENT)

156.    Kawasaki re-alleges and incorporates by reference paragraphs 1 through 29 and paragraphs 57 through 60, as though fully set forth herein.

157.    At all times relevant hereto, Kawasaki has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Kawasaki Cube #1."

158.     Morris's painting "Kawasaki Cube" (at Fig. S2, below) is substantially similar to Kawasaki's artwork "Kawasaki Cube #1" (at Fig. S1, below).

159.    Morris willfully and without permission copied Kawasaki's artwork or its constituent elements.

160.    Kawasaki is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.



Fig. S1: Kawasaki's "Kawasaki Cube #1"      Fig. S2: Morris's "Kawasaki Cube"

   

//

//

Case No. C11-01366-EMC

### FIRST AMENDED COMPLAINT

### TWENTIETH CLAIM FOR RELIEF
### (BY JASON KU FOR COPYRIGHT INFRINGEMENT)

161.    Ku re-alleges and incorporates by reference paragraphs 1 through 29 and paragraphs 61 through 64 as though fully set forth herein.

162.    At all times relevant hereto, Ku has held exclusive rights under the Copyright Act to reproduce, distribute, display, or produce derivative works of his artwork "Harpy"

163.    Morris's painting titled "Angel" (at Fig. T2, below) is substantially similar to Ku's artwork "Harpy" (at Fig. T1, below).

164.    Morris's "Angel" was featured as the cover of the April 2009 issue of Wallpaper* Magazine (trademarked with an asterisk in the title) (see Fig. T3, below).

165.    To memorialize the magazine cover, Wallpaper* Magazine commissioned a handmade rug, which was exhibited in Italy (see Fig. T4, below).

166.    Morris willfully and without permission copied Ku's artwork or its constituent elements.

167.    Ku is entitled to recover his actual damages and Morris's profits attributable to such infringement, subject to proof at trial.

Fig. T1: Ku's "Harpy"


Fig. T2: Morris's "Angel"


Case No. C11-01366-EMC

### FIRST AMENDED COMPLAINT

Fig. T3: April 2009 cover of *Wallpaper** magazine



Fig. T4: Rug on exhibit



## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant and for the following relief:

1.   Compensatory damages and all gains, profits, and advantages derived by Defendant through the acts of infringement, in an amount according to proof;

2.   As to Robert J. Lang, alternatively and at Lang's election, statutory damages for Claims 3 through 9, as allowed by law;

3.   Exemplary damages;

4.   A full accounting for each Infringing Work that includes information about where and when each work was exhibited, published, sold, or licensed, and Morris's net income derived from such activities;

5.   Permanent injunctive relief restraining Defendant and all those in concert with her from selling, exhibiting, publishing, licensing, or otherwise profiting from the Infringing Works;

Case No. C11-01366-EMC

FIRST AMENDED COMPLAINT

6.      Costs of suit, including attorney's fees, to the extent allowed by law;

7.      Such other relief as the Court may deem proper.

Dated: April 28, 2011                    **BAY OAK LAW**

By: _____
    ANDREW K. JACOBSON
    Counsel for Plaintiffs


**HAIMS VALENTINO LLP**

By: _____
    CAROLINE N. VALENTINO
    Counsel for Plaintiffs


**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: April 28, 2011                    **BAY OAK LAW**

By: _____
    ANDREW K. JACOBSON
    Counsel for Plaintiffs


**HAIMS VALENTINO LLP**

By: _____
    CAROLINE N. VALENTINO
    Counsel for Plaintiffs

**FIRST AMENDED COMPLAINT**