UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT J. LANG, *et al.*,

        Plaintiffs,

    v.

S. MORRIS,

        Defendant.
_____/

No. C-11-1366 EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Docket No. 24)**

Defendant Sarah Morris's motion to dismiss Plaintiffs' complaint for lack of personal jurisdiction came on for hearing before the Court on September 8, 2011. Docket No. 24. For the reasons set forth below, the Court **GRANTS** the motion.

### I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs Robert Lang, Noburu Miyajima, Manuel Sirgo, Nicola Bandoni, Toshikazu Kawasaki, and Jason Ku filed suit against painter and film maker Sarah Morris on March 22, 2011, alleging that 24 works in her Origami Series of paintings infringe Plaintiffs' origami design copyrights. Docket No. 1. Each plaintiff is an origami artist who has developed and published the crease patterns and instructions for his or her original origami designs in various fora, either online, or in print. First Amended Complaint ("FAC") ¶¶ 14-15, 32-35, 46-47, 50-51, 54, 58, 62. While "the lines of a crease pattern represent the folds needed to create a three-dimensional origami model from a sheet of paper, [] the intricacy of these geometric diagrams gives crease patterns their own aesthetic appeal. Crease patterns thus lend themselves to derivative works, such as colorized

versions." FAC ¶ 16. Plaintiffs' certificates of copyright refer to the 2-D crease patterns for the artists' origami designs, not their 3-D final form. *See, e.g.*, FAC Exh. D.

Defendant Sarah Morris is an "internationally recognized [] painter and film maker." FAC ¶ 17. She released a series of paintings related to origami in 2007, which consisted of 37 paintings featuring crease patterns of what Defendant referred to as "found origami designs" and "traditional" patterns. *Id.* Plaintiffs allege that 24 of those 37 works infringe on their original works because they are "strikingly similar" to crease patterns created and published by Plaintiffs. FAC ¶ 18. They assert that Defendant has "willfully infringed" their copyrights with these derivative works, created confusion as to the authorship of the crease patterns, and "created competition for Plaintiffs by occupying the market for painted versions of their copyrighted artworks." FAC ¶ 24, 28-29.

Plaintiffs allege that Defendant has exhibited, promoted, and sold works from her Origami Series around the world. FAC ¶¶ 21, 23. These efforts have generated monetary and reputational benefits for her. FAC ¶ 25. Plaintiffs seek damages and injunctive relief as to each of the allegedly infringing works.

Plaintiff Robert Lang is the only party who resides in California. FAC ¶ 2. Lang's website includes depictions of some of the allegedly infringed works. FAC ¶ 35. His website states that he resides in Alamo, California, and that the site "is controlled by Robert J. Lang from within the state of California, USA. By accessing this website, you agree that all matters relative to access to, or use of, this website shall be governed by the laws and courts of the state of California." FAC ¶ 34. In addition, Lang was featured in a *New Yorker* article, the first sentence of which described Lang as a Californian. FAC ¶ 36. Defendant admits that she read the article and that she referred to some of Lang's "instructions" as inspiration for her work, FAC ¶¶ 37-38, 41, but she denies knowing that he was a California resident. Morris Decl. ¶ 15. Plaintiffs allege further that Defendant has visited California "in a professional capacity." FAC ¶ 42.

///

///

///

///

## II. DISCUSSION

A. Specific Personal Jurisdiction[1]

Plaintiffs bear the burden of demonstrating that jurisdiction is proper. *See Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). However, Plaintiffs need only make a prima facie showing. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995) (stating that, when there has been no evidentiary hearing, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction"). Thus, "Plaintiff[s] need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). In considering this motion, the Court takes as true Plaintiff's allegations and resolves all factual disputes in Plaintiff's favor. *Corbis Corp. v. Integrity Wealth Management, Inc.*, No. C09-708 MJP, 2009 WL 2486163, at *1 (W.D. Wash. Aug. 12, 2009) (citing *Unocal*, 248 F.3d at 922). However, the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quotation omitted)). In addition, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Fiore v. Walden*, --- F.3d ----, 2011 WL 4014311, at *5 (9th Cir. Sept. 12, 2011).

Where, as here, no federal statute authorizes personal jurisdiction, the Court applies the law of the state in which the court sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute, Cal. Code Civ. P. § 410.10, extends to the limits of federal due process requirements, so the Court need only conduct jurisdictional analysis under federal due process. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Mavrix*, 647 F.3d at 1223 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[1] Plaintiffs do not contend that the Court has general personal jurisdiction over Defendant. Therefore, the Court addresses only specific personal jurisdiction.

The Ninth Circuit has established a three-prong test for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger*, 374 F.3d at 802. Plaintiffs bear the burden of satisfying the first two prongs; if they do, the burden shifts to Defendant to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Mavrix*, 647 F.3d at 1228 (internal citations and quotation marks omitted).

In this case, Defendant argues that this Court does not have specific personal jurisdiction over her because she has no contacts with the State of California. She is a New York resident and divides her time between New York and London. Morris Decl. ¶¶ 2-3, 6. She states that the only authorized sellers of her works–including the Origami Series–are galleries in New York, London, and Berlin. Morris Decl. ¶¶ 5, 7-8. She has not sold any allegedly infringing works in California, and has never had a "gallery, agent, or representative in California." Morris Decl. ¶¶ 10-11. Plaintiffs, by contrast, argue that Defendant targeted Lang, a California resident, and willfully infringed his copyrighted works with the knowledge that he was in California. Opp. at 3. Defendant denies knowing Lang was a Californian. Morris Decl. ¶ 15.

1. Purposeful Direction

Under the first prong of the specific jurisdiction test, Plaintiffs must establish that Defendant either purposefully availed herself of the privilege of conducting activities in California, or purposefully directed her activities toward California. *See Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit has noted that purposeful availment and purposeful direction are two distinct concepts. "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (internal

citations omitted). In this case, it is undisputed that a claim for copyright infringement sounds in tort. Although there is no absolute rule prohibiting the application of either test, both parties focus their arguments on a purposeful direction analysis. *See, e.g.*, *IO Group, Inc. v. Pivotal, Inc.*, No. C 03-5286 MHP, 2004 U.S. Dist. LEXIS 6673, at *17 (N.D. Cal. Apr. 19, 2004) ("Copyright infringement may be characterized as an intentional tort.").

In analyzing purposeful direction, the Court applies the "effects" test first established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1983). *See Schwarzenegger*, 374 F.3d at 803. According to this test, Defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *See Bancroft & Masters, Inc. v. August Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

### a. Intentional Act

The Ninth Circuit has construed intent as referring to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon* ("*Brayton Purcell*"), 606 F.3d 1124, 1128 (9th Cir. 2010). Here, the intentional act requirement is easily satisfied, as Defendant committed an intentional act when she created paintings that allegedly infringe Plaintiffs' copyright. *See id.* (finding that intentional act requirement was "easily satisfied" in copyright infringement actions).

### b. Express Aiming

The second prong of the *Calder* effects test is whether the Defendant expressly aimed her conduct at the forum. The Ninth Circuit has explained that "'something more' than mere foreseeability [is required] in order to justify the assertion of personal jurisdiction," *Schwarzenegger*, 374 F.3d at 805; that "something more" is "what the Supreme Court described as 'express aiming' at the forum state." *See Pebble Beach*, 453 F.3d at 1156 (quoting *Bancroft*, 223 F.3d at 1087).

In copyright infringement cases like the one here, some courts have interpreted Ninth Circuit precedent to find that the express aiming requirement is satisfied when the defendant is being sued for copyright infringement, the plaintiff brings suit in the forum where the plaintiff resides, and the

defendant knows that the plaintiff resides there. *See Righthaven LLC v. South Coast Partners, Inc.*, No. 2:10-CV-01062-LRH, 2011 WL 534046, at *3 (D. Nev. Feb. 8, 2011) (citing *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *overruled on other grounds by Feltner v. Columbia Pictures*, 523 U.S. 340 (1998)) (finding that the purposeful availment requirement of the specific jurisdiction test was satisfied where the defendant had "willfully infringed copyrights owned by Columbia, which, as [the defendant] knew, had its principal place of business in [the forum]"). However, to the extent that *Columbia Pictures* can be read to establish such a bright line rule,[2] courts have noted the "substantial tension – if not [] irreconcilable conflict – [] between *Columbia Pictures'* application of *Calder* and a series of subsequent opinions by the Ninth Circuit." *Id.* at *3; *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (holding that a defendant's knowledge of the plaintiff's residency goes to the "foreseeable effects" prong of the *Calder* test and is not sufficient on its own to establish the "express aiming" prong); *Schwarzenegger*, 374 F.3d at 807 (holding that knowledge of plaintiff's residency was insufficient to show express aiming where the defendant only targeted the Ohio market, not the California market, with its unauthorized use of the plaintiff's image); *Cf. Bancroft & Masters*, 223 F.3d at 1087-88 (individually targeting a California Plaintiff by challenging its registered domain name with the registrar of domain names with the intent of disrupting its business in California constituted express aiming).

Recent Ninth Circuit case law has shed greater light on the express aiming standard in the context of cases similar to the one at bar; recent decisions make clear that an allegation of copyright

---

[2] Indeed, despite *Columbia Pictures*' statement – arguably in dicta – that knowledge "alone is sufficient," even that court highlighted the fact that more was present than mere knowledge. *See Columbia Pictures*, 106 F.3d at 289 (in addition to the knowledge requirement, "[Defendant's] contract-related contacts [with Plaintiff in the Forum] are sufficient to satisfy the 'purposeful availment' requirement"). This Court has been unable to find any case in which a court relied only on the defendant's knowledge of the plaintiff's residency (coupled with an allegation of copyright infringement or other tortuous conduct) in finding specific personal jurisdiction. *See, e.g.*, *Righthaven, LLC v. Virginia Citizens Defense League, Inc.*, No. 2:10-CV-01683-GMN, 2011 WL 2550627, at *4 (D. Nev. June 23, 2011) (stating that knowledge is sufficient but also noting that "the content of [an] article [published and distributed in Las Vegas] is about an incident occurring in Nevada and is of special interest to Nevada citizens"); *South Coast Partners*, 2011 WL 534046 at *4 ("[I]n addition to the defendants' alleged willful copyright infringement and their knowledge that the copying of a Las Vegas Review Journal article would produce harm in Nevada, the content of the copied article is focused on issues specifically related to Nevada and of special interest to Nevada citizens.").

infringement with knowledge that the plaintiff resides in the forum is insufficient, on its own, to establish express aiming. In *Brayton Purcell*, for example, the Ninth Circuit found that Recordon had expressly aimed its conduct at the forum by allegedly willfully infringing Brayton Purcell's copyright for the purpose of *competing* with Brayton Purcell *in the forum*. *Brayton Purcell*, 606 F.3d at 1129 (emphasis added); *see also Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 n.4 (9th Cir. 2010) (interpreting *Brayton Purcell* as holding "that the 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum"). The Ninth Circuit, in emphasizing the defendant's competition with the plaintiff *in the forum*, distinguished the circuit's prior decisions in *Pebble Beach* and *Schwarzenegger*. *See Brayton Purcell*, 606 F.3d at 1130 ("By plagiarizing Brayton Purcell's website verbatim, Recordon allegedly placed the two law firms in competition in the area of elder abuse law and created confusion among potential clients as to the true authorship of the elder abuse material. This individualized targeting distinguishes the instant case from *Pebble Beach*."); *id.* ("In contrast [to *Schwarzenegger*], Recordon had every reason to believe prospective clients in Northern California would see the website-indeed, attracting new business was the point.").

Subsequent cases in this circuit have affirmed *Brayton Purcell*'s focus not on the place of the defendant's residence but the location of the competition targeted by the plaintiff. In *Love*, the Court affirmed a district court's dismissal of one defendant – the creator and licensor of CDs promoted in Britain – for lack of personal jurisdiction. *Love*, 611 F.3d at 609. The *Love* court found that a plaintiff must present substantive allegations that the defendant actually targeted the plaintiff's business in the forum.

> In *Brayton*, in contrast to here, the plaintiff (a [Northern] California law firm) actually alleged facts that, if proven, would show that the defendant (a [Southern] California law firm) intentionally targeted the plaintiff's business where the plaintiff firm was located. We merely held that the defendant's 'conclusory denial' that its actions were not aimed at prospective clients in Northern California did 'not rebut' the plaintiff's fact-based allegation to the contrary.

*See id.* at 609 n.4 (internal citations omitted). Similarly, if a defendant could show that its "'express aim was local,' the fact that it caused harm to the plaintiff in the forum state, even if the defendant

7

knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test." *Love*, 611 F.3d at 609 (quoting *Schwarzenegger*, 374 F.3d at 807); *see also Dantonio v. Southwest Educational Development Laboratory*, No. C10-1193RSL, 2011 WL 2118577, at *4 (W.D. Wash. May 26, 2011) (construing *Love* as requiring the plaintiff to provide "fact-based allegations supporting her claim that defendants engaged in targeted competition with her").

In *CollegeSource*, the Court used the following language for articulating the test for express aiming: "[T]he 'express aiming' requirement . . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct *targeted at a plaintiff* whom the defendant knows to be a resident of the forum state.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, --- F.3d ----, 2011 WL 3437040, at *8 (9th Cir. Aug. 8, 2011) (emphasis added) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Bancroft*, 223 F.3d at 1087)). Despite the seemingly broad formulation, like *Love* and *Brayton Purcell*, *CollegeSource* did not give the defendant's knowledge of the plaintiff's residence dispositive weight, but rather concluded that Academy One – a company that competed with CollegeSource "in the market to assist students and educational institutions with the college transfer process," *id*. at *1 – had expressly aimed its conduct at the forum due to its alleged individual targeting of CollegeSource's California business and the fact that "CollegeSource and AcademyOne were direct competitors in a relatively small industry." *Id. at* *9. Thus, the full analysis in *CollegeSource* is entirely consistent with *Brayton Purcell* and *Love*.

In *Mavrix*, the Ninth Circuit considered whether an Ohio-based company (Brand) that operates a celebrity gossip website had expressly aimed its conduct at California by reposting a celebrity photo agency's (Mavrix) copyrighted photos of celebrities on Brand's website. The Court summarized a number of relevant factors in the context of "nationally accessible website[s]" that assist courts "[i]n determining whether a nonresident defendant has done "something more," . . . including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." 647 F.3d at 1229. The Court concluded that because "Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain," it had expressly aimed its conduct at the forum. *Id*. It analogized Brand's targeting of the California

8

celebrity and entertainment markets to Hustler's "continuous[] and deliberate[] exploit[ation of] the New Hampshire market" via magazine subscriptions, which the Supreme Court had deemed sufficient to subject Hustler to personal jurisdiction in the state. *Id*. at 1230 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)). Brand, like Hustler, had "anticipated, desired, and achieved a substantial [forum] viewer base." *Id*. Therefore, the Court concluded, "it does not violate due process to hold Brand answerable in a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians." *Id*. Again the plaintiff had targeted the defendant's business in the forum state.

Finally, though less on point given the subject matter, the Ninth Circuit recently found that a DEA agent had expressly aimed his conduct at the state of Nevada by wrongfully seizing currency from plaintiffs flying to Nevada and, with the intent to disrupt their business activities in Nevada, filed allegedly false probable cause affidavit attempting to retain the funds in Atlanta rather than returning them to Nevada. *Fiore*, 2011 WL 4014311 at *6-11. The Court found that even though all conduct occurred in Georgia, the defendant had expressly aimed at Nevada by directly targeting plaintiffs' activities there and filing documents intended to prevent their money from being returned to Nevada. Notably, the Court found that merely targeting the plaintiffs by seizing the money plaintiffs intended to take to Nevada was *not* sufficient to constitute express aiming; rather, it was the fact that the defendant filed a false affidavit aimed at permanently withholding the money from plaintiffs *in the forum* that his conduct satisfied the standard. *Id*. at 6-7.

Thus, the Ninth Circuit has made it clear that Defendant's alleged willful copyright violation with mere knowledge of Plaintiff's residency is not, in itself, sufficient to confer personal jurisdiction. Rather, the Court must also determine whether Defendant individually *targeted or competed* with Plaintiff Lang *in the forum*.

In the instant case, it is undisputed that Defendant has been sued for willful copyright infringement and that Lang resides in California. Accordingly, the points in dispute are (1) whether Defendant knew Lang resided in California; and (2) whether Defendant individually targeted Lang for the purpose of competing with him in the forum.

i.  Knowledge of Lang's Residence

Plaintiffs provide two ways in which Defendant knew Lang was a Californian. First, they allege that Lang's website indicated that he is from California, and that Defendant accessed at least one of Lang's works from that website.[3] FAC ¶¶ 34, 44. Defendant does not deny that she accessed Lang's website; accordingly, the Court must take Plaintiffs' uncontroverted allegation that she did as true. *See* FAC ¶ 44 ("On information and belief, Morris accessed [Lang's "Hummingbird" crease pattern] from Lang's California-based website.").[4] For purposes of establishing jurisdictional facts, the court may impute knowledge to the Defendant based on Plaintiffs' allegations. *See Autodesk, Inc. v. RK Mace Engineering, Inc.*, No. C-03-5128 VRW, 2004 WL 603382, at *6 (N.D. Cal. March 11, 2004) ("Although plaintiff bought its software in Missouri, the software was accompanied by several documents that show that plaintiff's primary place of business is located in San Rafael, California. Based on these notices, defendant should have known that plaintiff is headquartered in northern California.") (internal quotations omitted); *MGM v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1089 (C.D. Cal. 2003) (Applying constructive knowledge where defendant "reasonably should be aware that many, if not most, music and video copyrights are owned by California-based companies").

Second, and more persuasively, Plaintiffs allege that Lang's California residency is disclosed in the first sentence of a New Yorker article which Defendant admits she read and has discussed in interviews. FAC ¶¶ 36-38; Morris Decl. ¶ 15. This allegation is sufficient to make a prima facie showing of Defendant's knowledge notwithstanding her assertions to the contrary. *See Expert*

---

[3] To the extent that Plaintiffs make a choice of laws argument based on Lang's website notice, *see* FAC ¶ 34 ("By accessing this website, you agree that all matters relating to access to, or use of, this website shall be governed by the laws and courts of the state of California."), that is unpersuasive. *See Attachmate Corp. v. Celcom Axiata Berhad*, No. C10-0526-RSM, 2010 U.S. Dist. LEXIS 123501 (W.D. Wash. Nov. 22, 2010) (finding that language in click-through end user license agreements "stating that the contracts are 'governed by the laws of the State of Washington, USA'" was insufficient to establish purposeful availment and did not " require that litigation occur in a particular court") (citing *Docksider v. Sea Technology*, 875 F.2d 762, 763-764 (9th Cir. 1989) ("When only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.").

[4] Defendant points out that many of Lang's images were available on other sites without notice that Lang was a Californian, *see* Reply at 6 n.6, but she does not reveal where she actually accessed any of his images and does not deny accessing his site.

*Pages v. Buckalew*, No. C-97-2109-VRW, 1997 WL 488011, at *3 (N.D. Cal. Aug. 6, 1997) (finding knowledge where Defendant admitted he had visited Plaintiff's website and Plaintiff submitted a declaration that its California address appeared prominently on the first page of that site); *Corbis Corp. v. Integrity Wealth Management, Inc.*, No. C09-708 MJP, 2009 WL 2486163, at *2 (W.D. Wash. Aug. 12, 2009) (finding it sufficient that Plaintiff alleged Defendant retrieved materials from its website and "Plaintiff's website states that Seattle, Washington is Plaintiff's headquarters"). As in *Expert Pages*, here Plaintiff has submitted evidence that Lang's residence was apparent from sources Defendant admits she read, in this case the *New Yorker* article. Though Defendant disputes her actual knowledge of Lang's residence, at this stage the Court must "tak[e] Plaintiff's allegations as true and resolv[e] conflicts between declarations in Plaintiff's favor." *Cybersitter v. People's Republic of China*, No. CV 10-0038 JST, --- F. Supp. 2d ----, 2011 WL 3322552, at *11 (C.D. Cal. Aug. 1, 2011).

Accordingly, though Plaintiffs' allegations of Defendant's knowledge are weaker than in *Columbia Pictures* and *Brayton Purcell*, Plaintiffs have met their burden at this stage to show that Defendant knew Lang resided in California. However, this fact alone is not sufficient to establish jurisdiction.

ii.     Individualized Targeting/Competition

Whether Defendant has individually targeted or competed with Lang in California is a more complicated question. Based on the allegations and declarations submitted, the Court concludes that Plaintiffs have failed to make a prima facie showing that Defendant has targeted Lang to compete with him *in California*.

Plaintiffs argue that Defendant has individually targeted Lang in California by virtue of the fact that she (allegedly) willfully infringed his works. *See* FAC ¶ 39; Opp. at 9. At oral argument, they also claimed that there is a distinct analysis for copyright infringement as opposed to other causes of action due to the unique bundle of rights held by a copyright owner. The Court does not discern such a distinction in the law, as the Ninth Circuit has analyzed copyright infringement cases such as *Brayton Purcell* and *Mavrix* under the same standards and lines of cases as other similar causes of action. *See Brayton Purcell*, 606 F.3d at 1129-30 (using non-copyright infringement cases

11

1 including Schwarzenegger, Pebble Beach, and others as part of its express aiming analysis without
2 noting any special treatment for copyright infringement actions); *Mavrix*, 647 F.3d at 1229-30
3 (same).[5]

4 Moreover, Plaintiffs' requested standard is not consistent with the Ninth Circuit's recent case law in copyright infringement cases. Indeed, in *Brayton Purcell*, a copyright infringement case, the court did not hold that individualized targeting occurs merely through alleged willful infringement under a unique bundle of rights or any other theory. Instead, as noted above, the court focused on the specific facts of that particular alleged infringement, which pitted two law firms directly against each other for clients *in the same forum. See Brayton Purcell*, 606 F.3d at 1129 ("Taking Brayton Purcell's allegations and statements as true, Recordon individually targeted Brayton Purcell by making commercial use of Brayton Purcell's copyrighted material for the purpose of competing with Brayton Purcell for elder abuse clients."). Similarly, in *Mavrix*, the mere posting of the plaintiff's copyrighted photos did not constitute individual targeting sufficient to confer jurisdiction; rather, it was the act of posting the photos on a website *aimed at a California audience* that satisfied the standard. *Mavrix*, 647 F.3d at 1229 ("In this case, we find most salient the fact that Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain."). Conversely, in *Love*, the alleged infringement was not expressly aimed at the forum because the defendant promoted the materials in the United Kingdom and Ireland, not in California. Thus, even to the extent that the defendants were competing with Love in the broader market for Beach Boys related performances and recordings, such competition did not take place in the forum. *Love*, 611 F.3d at 609.[6]

---

[5] Plaintiffs also cited to a Second Circuit case, *Penguin Group (USA) Inc. v. American Buddha*, 640 F.3d 497 (2d Cir. 2011), in support of their argument that copyright cases are unique. *Penguin Group*, however, is inapposite as it merely addressed the question of the where the injury occurred in a copyright infringement case under New York's long-arm statute, and remanded to the district court to consider the remaining factors for personal jurisdiction under both New York and constitutional standards. *Id*. at 500-01.

[6] Despite Defendant's contention that she does not compete with Plaintiff at all, Plaintiffs have alleged that crease patterns are themselves works of art and that her infringement therefore constitutes direct competition with them. *Compare* Reply at 5 n.4 (arguing that Defendant's paintings cannot be said to compete with Plaintiffs' "crease-pattern instructions for folding paper origami," *with* FAC ¶ 16 (due to crease patterns' separate "aesthetic appeal," they "lend themselves to derivative works, such as colorized versions"); *id*. ¶ 29 ("Morris's actions have created

In the case at bar, Plaintiffs have failed to make a prima facie showing that Defendant has targeted or competed with Lang in California. Plaintiffs make numerous allegations, each of which is either substantively rebutted by Defendant or not probative of the claim that she is competing with Lang in the forum.

First, Plaintiffs allege that Morris is internationally recognized as an artist and has actively promoted the Origami Series. *See* FAC ¶¶ 17, 21, 23. However, that Morris is a well-known artist is not probative of whether she competed with or targeted Lang in California. Plaintiffs fail to allege that Morris has marketed or promoted any of the allegedly infringing works in California. *See* FAC ¶ 21 (listing New York, Miami, London, Berlin, Tokyo, Frankfurt, and Abu Dhabi as cities in which paintings in the Origami series have been exhibited)[7]; Opp. at 8 (discussing Defendant's attendance at an exhibition in Switzerland and interview with an Istanbul-based internet magazine). To the extent that Plaintiffs do allege Defendant's involvement in markets that would include California, *see* FAC ¶ 23 ("On information and belief, Morris has sold or offered for sale the Infringing Works throughout the United States and internationally."), those allegations are unsupported and refuted by Morris. She states without contradiction in evidence, "The only authorized source of my works in the United States is and at all relevant times has been the Friedrich Petzel Gallery in New York." Morris Decl. ¶ 5. She also declares, "None of the Challenged Works was ever sold, or consigned for sale, in California by me or anyone authorized by me." Morris Decl. ¶ 16. The Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix*, 647 F.3d at 1223 (quotation omitted). In short, the uncontradicted evidence is that Morris has never sold her art directly into California.

Second, Plaintiffs allege that one of Morris's infringing paintings is located at a Los Angeles art gallery. *See* FAC ¶ 43 (stating that a Los Angeles gallery – Adam Biesk – possesses one of the

---

competition for Plaintiffs by occupying the market for painted versions of their copyrighted artworks."). At this stage, the Court resolves this dispute in favor of Plaintiffs and assumes that Defendant is at least competing with them in the broader market for origami-related artworks.

[7] Indeed, even with respect to these cities, Plaintiffs do not allege that Morris directly participated in or authorized these exhibitions. *See* Morris Supp. Decl. ¶ 2 (noting that some exhibitions highlighted by Plaintiffs are unconnected to Defendant and one was simply a presentation of works from the museum's own collection).

13

1 Origami Series paintings). However, they neither allege, nor present any factual support for, 2 Defendant's involvement in, direction of, or profit from this sale. Indeed, Morris clarifies in her 3 declaration that she "did not sell any of the allegedly infringing works through any gallery or other 4 agent in California, and had never heard of Adam Biesk prior to this lawsuit." Morris Decl. ¶ 10. 5 Personal jurisdiction cannot be based on "attenuated contacts, or of the unilateral activity of another 6 party or a third person." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 379 F.3d 7 1120, 1124 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) 8 (internal quotation marks and citations omitted). Instead, "A defendant must, by [her] own actions, 9 create a "substantial connection" to the forum state." *Id.*; *see also Helicopteros Nacionales de 10 Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (in the context of general jurisdiction, finding that 11 courts cannot consider a third party's unilateral activities as a basis for the defendant's contacts with 12 the forum). That one of Morris's works was found in a California gallery, presumably acquired 13 through a secondary sale, does not establish such a "substantial connection."

14 *Mavrix* is instructive on this point. In *Mavrix*, the Court found that Brand had systematically 15 targeted and benefitted from the California market to the extent that he was constructively aware of 16 and directing his third-party advertisers – to whom he sold ad space – in their efforts to further target 17 that market. *Mavrix*, 647 F.3d at 1230. Thus, the court attributed those advertisers' conduct to 18 Brand because "[t]he fact that the advertisements [on Brand's own website] targeted California 19 residents indicates that Brand knows – either actually or constructively – about its California user 20 base, and that it exploits that base for commercial gain by selling space on its website for 21 advertisements." *Id*. By contrast, here Plaintiffs make no supported allegation that Defendant 22 targets or benefits from the California market, nor that she sold or directed the sale of any paintings 23 to California galleries. *Cf. Burger King*, 471 U.S. at 475 ("Jurisdiction is proper . . . where the 24 contacts proximately result from actions by the defendant *himself* that create a substantial connection 25 with the forum State.") (emphasis in original) (internal citations and quotation marks omitted).

26 Third, Plaintiffs allege that Defendant's works are available for sale online through the 27 Barbara Krakow gallery and that images of her works are available for viewing online. *See* 28 Valentino Decl. ¶ 6 (providing link to Massachusetts-based Barbara Krakow gallery webpage selling

works from the Origami Series); FAC ¶ 21. However, Plaintiffs do not allege that Morris maintained any interactive websites targeted at California buyers so as to constitute "something more" than a mere passive website. As the court in *Brayton Purcell*, 606 F.3d at 1129 held, "[M]aintenance of a passive website alone cannot satisfy the express aiming prong." Indeed, the Krakow gallery website contains no interactive features other than an information request form, which is insufficient to constitute "something more." In fact, Plaintiffs have not alleged that Defendant has directed or managed any of the sites currently displaying her works, and Morris herself maintains no website. Morris Decl. ¶ 16 ("Any websites displaying the Challenged Works were operated by third parties, not by me. I maintain no website of my own."); Morris Supp. Decl. ¶ 4 (explaining that she sold the works that are currently available at the Barbara Krakow gallery to a print publisher in Germany, and that any sales to the Krakow Gallery and by the gallery to other customers are in the secondary market to which she is not connected). *See Pebble Beach*, 453 F.3d at 1153-54 ("The website is not interactive. Visitors to the website who have questions about Caddy's services may fill out an on-line inquiry form."). *Cf. Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding express aiming beyond a passive website where "RIO alleged that RII 'specifically targeted consumers' in Nevada 'by running radio and print advertisements in Las Vegas'").

Fourth, Plaintiffs allege that Defendant has had some professional contact with California. *See* Valentino Decl. ¶¶ 3-5 (discussing Morris's "Los Angeles" films and paintings and other, non-Origami Series works that have been exhibited or displayed in California). However, these allegations do not establish what Plaintiffs claim they establish. As Morris explains, her Los Angeles series of paintings were merely "inspired by the *idea* of Los Angeles" and were not "created, marketed, or sold by me in California." Morris Supp. Decl. ¶ 3. Her declaration is somewhat confusing as to the Los Angeles films, and it is unclear whether she made any part of those films in California. Therefore, the Court may construe this ambiguity in favor of Plaintiffs. Nonetheless, Plaintiffs failed to show these films had anything to do with the accused paintings at issue in this case. Regarding the two non-Origami Series exhibitions conducted in California, Morris explains that these exhibitions were not solo but rather were "single works included in larger

15

'group exhibitions' organized by others." Moreover, she states unequivocally, "I have never had gallery representation in California, nor have I ever exhibited my works for sale in California." Morris Supp. Decl. ¶ 2.

Even resolving conflicts in favor of Plaintiffs, these allegations do not show – even on a prima facie basis – that she directed any conduct to California related to the allegedly infringing works or the harm they have caused. *See Love*, 611 F.3d at 609 ("Here, BigTime.tv did contact people in California regarding the promotion that would eventually lead to this law suit. However, those discussions did not enable or contribute to the promotion activities that actually gave rise to the law suit.").

Moreover, these claims would also be insufficient bases to satisfy the second jurisdictional prong of *Schwarzenegger*, which requires that the claims arise out of Defendant's forum-related activities. *See Panavision International v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("We must determine if the plaintiff....would not have been injured 'but for' the defendant['s] . . . conduct directed toward [plaintiff] in [the forum]."). None of Defendant's contacts related to the Los Angeles films and paintings and the non-Origami Series paintings displayed in California form the basis of Plaintiffs' claims regarding the Infringing Works.

Thus, Plaintiffs' allegations of Defendant's contacts with California either do not relate to the Infringing Works – such that any involvement in California cannot have targeted or created competition with Lang in California – or are not attributable to Defendant herself. By contrast, Defendant has produced substantive evidence that she does not aim her professional activities – particularly any related to the Infringing Works – at California. While a defendant's "conclusory denial that its actions were not aimed at prospective clients in [the forum] [will] not rebut the plaintiff's fact-based allegation to the contrary," *Love*, 611 F.3d at 609 n.4 (internal quotation marks omitted), in this case, Defendant has offered much more than a conclusory denial. Accordingly, the Court finds that Plaintiffs have not sustained their burden of showing that Defendant expressly aimed her conduct at California.

B.  Jurisdictional Discovery

In the event that the Court has doubts about whether it can exercise personal jurisdiction over Defendant, Plaintiffs request jurisdictional discovery. Opp. at 14. This Court has "broad discretion to permit or deny [jurisdictional] discovery." *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-06038-CRB (DMR), 2010 WL 3515759, at *3 (N.D. Cal. Sept. 8, 2010) (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir.2003)). "[W]here pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary," discovery is warranted. *Id*. A plaintiff need only present a "colorable basis" for jurisdiction in order to obtain discovery, *id*. at 4 (citations omitted), and a court abuses its discretion in denying discovery when it "might well demonstrate jurisdictionally relevant facts," *id*. at *3 (quoting *Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir.2003)). However, discovery is not warranted if a plaintiff cannot "demonstrate how further discovery would allow it to contradict the [defendant's] affidavits." *Terracom*, 49 F.3d at 562.

Here, Defendant's affidavits are comprehensive. She states unequivocally that she has never sold any of the allegedly infringing works in California, has never had gallery representation in the state, and has never exhibited any of the works in California. Plaintiffs have also not provided any detail to the Court as to what discovery would establish. Therefore, the Court declines to permit jurisdictional discovery as it would appear to be futile in this case.

### III.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction.

This order disposes of Docket No. 24.

IT IS SO ORDERED.

Dated: October 12, 2011

_____
EDWARD M. CHEN
United States District Judge